IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| Arthur K. Freimuth, | : | |
|---|---|---|
| | : | Case No. 1:16-cv-804 |
| Plaintiff, | : | |
| | : | Judge Susan J. Dlott |
| v. | : | |
| | : | Order Granting in Part and Denying in |
| Anthony Abdullah, *et al.*, | : | Part Defendants' Motion for Summary |
| | : | Judgment |
| Defendants. | : | |

This matter is before the Court on Defendants' Motion for Summary Judgment (Doc. 25). Plaintiff Arthur K. Freimuth has sued certain Butler County, Ohio law enforcement officers and medical personnel, alleging that they violated his constitutional rights by providing him inadequate medical care while he was held at the Butler County Jail. Defendants move for summary judgment as to all claims asserted against them. For the reasons that follow, the Court will **GRANT IN PART AND DENY IN PART** the Motion.

I.  **BACKGROUND**

A.  **Factual History**

Except where otherwise specifically noted, these background facts are derived from Defendants' Proposed Undisputed Facts (Doc. 25-9) and Plaintiff's Response (Doc. 32) thereto.

Plaintiff Arthur K. Freimuth has type II diabetes. (Freimuth Dep., Doc. 26-1 at PageID 387.) His medical treatment plan calls for him to take insulin three times per day: in the morning, before lunch, and before dinner. (*Id.* at PageID 347.) Freimuth was arrested for domestic violence on March 24, 2015 at approximately 1:00 p.m. He was taken to the Butler County Jail.

1

At approximately 1:15 p.m., Defendant Jaime Partee, a certified medic employed by the jail, was called to check on Freimuth to determine if he could be admitted into the jail. Freimuth did not complain of any immediate medical problems, and he was alert and oriented as to who and where he was. Freimuth told Medic Partee that he was diabetic, the types of medications he took, including insulin three times per day, and the name of his doctor and pharmacy. Medic Partee explained the diabetic protocol for the jail to Freimuth. Medic Partee had no further interactions with Freimuth. At approximately 1:45 p.m., Medic Partee called Freimuth's wife. She told him that Freimuth should be taken to the hospital, but Freimuth had no emergent medical condition necessitating emergency care at that time.

That same day at approximately 2:45 p.m., Defendant Leroy Cardwell, Jr.,[1] a deputy with the Butler County Sheriff's Office, asked Freimuth a series of medical questions. Freimuth responded to the questions and informed Deputy Cardwell that he was diabetic, allergic to synthetic insulin, and had back problems. Deputy Cardwell provided the medical questionnaire responses to the medical department. That was his only contact with Freimuth.

At 5:10 p.m., Defendant Randall Oney, a medic and registered nurse who served as a medical supervisor at the jail, performed an intake screening on Freimuth. The intake screening consists of a medical history, physical examination, blood-glucose test, and urinalysis. Freimuth was cooperative and pleasant during the screening and did not exhibit any distress. He disclosed that he had been diagnosed with diabetes, hypertension, hyperlipidemia, chronic pain, obesity, and a herniated disc in his back. Freimuth's vital signs, blood glucose level, and urinalysis did not show any emergent conditions. His vital signs were within normal limits except for slightly

---

[1] Leroy Cardwell, Jr. is incorrectly identified as Leroy Caldwell, Jr. in Plaintiff's Amended Complaint.

elevated blood pressure. His blood sugar level was 171, which is higher than normal, but higher levels can occur with diabetes. Finally, the urinalysis was negative for the presence of blood. The urinalysis did show a trace of ketones and protein, but that is not unusual for a diabetic and not indicative of a medical emergency.

Medic Oney set up a schedule for testing Freimuth's blood sugar levels and administering insulin at 4:30 a.m., 10:30 a.m., and 4:30 p.m., just before breakfast, lunch, and dinner, respectively. It is normal for a diabetic to take insulin before meals because eating typically increases blood sugar levels. Medic Oney also set up other medications for managing Freimuth's blood pressure, reflux, and pain, and an antibiotic.

At approximately 7:40 p.m., Freimuth's family brought his insulin into the jail because the jail's normal pharmacy did not carry that specific insulin. Medic Oney did not administer insulin to Freimuth at that time because he was told that Freimuth did not eat dinner.[2] Medic Oney believed the insulin could have decreased Freimuth's blood sugar to a dangerous level. Medic Oney, whose shift ended at midnight, had no additional contact with Freimuth.

Defendant Patricia Sims,[3] another paramedic at the jail, started her shift at midnight on March 25, 2015. Medic Sims had treated hundreds of patients with diabetes at the hospital and the jail. At approximately 12:45 a.m., Medic Sims was called to check on Freimuth because he complained to a corrections officer about low blood sugar. She tested his blood sugar level, and

---

[2] Freimuth testified at his deposition that he turned down two meals during his stay at the jail because they appeared to be non-diabetic meals high in simple carbohydrates. (Doc. 26-1 at PageID 366–67.) Freimuth's treating physician stated that diabetics such as Freimuth must eat a regulated amount of carbohydrates at regular intervals to control their blood sugar level. (Mangu Dep., Doc. 26-3 at PageID 431.) The treating physician, who was not testifying as an expert opinion witness, did not testify as to whether the meals provided to Freimuth in the jail were appropriate.

[3] Patricia Sims is incorrectly identified as Patricia Simms in Plaintiff's Amended Complaint.

it was 335. Medic Sims testified that Freimuth did not appear to be in distress and did not display symptoms of hyperglycemia or ketoacidosis. (Sims Decl., Doc. 25-5 at 204, 206.) Freimuth was scheduled to receive insulin approximately four hours later around 4:30 a.m. Medic Sims determined to not administer insulin until the scheduled time. (*Id.* at PageID 204.) She explained in her Declaration that diabetic patients with high blood sugar levels are not always in distress and do not always require insulin. (*Id.* at PageID 204–05.) She also stated that diabetic patients benefit from keeping to a regular testing and insulin schedule to help reduce the risk for severe fluctuations in blood glucose levels. (*Id.* at PageID 205.) This was Medic Sims's only contact with Freimuth.

Freimuth does not dispute these general principles of diabetic care management espoused by Medic Sims. However, he disputes that he was not in distress. Freimuth asserts that a diabetic with a blood sugar level over 300, by definition, is in distress. He supports his assertion by citing the following testimony by his treating physician, Dr. Padma Mangu:

> Q. So if you have -- in Kurt [Freimuth]'s case, you would want to know if his blood sugar at one point went above 300? Would that be a problem for him?
>
> [Defense Counsel]: Objection.
>
> THE WITNESS: Definitely. But from what I remember, his control, I mean, based on his blood tests, has not been good. So he has had -- the tests we use to follow diabetes is called hemoglobin A1C, and I can't remember what his hemoglobin A1C have been, but they have not been in control.
>
> So I would expect that a person with diabetes who has high hemoglobin A1C has seen those numbers. So it wouldn't be a first time, if he had a sugar of 300, with the A1C values, that he used to run. From what I remember, he would have those numbers. So those numbers over 300 is always concerning. Over 200 is concerning, but, you know, it's not one of those where just that number alone, if it's a one-time number, does not really make me really worry too much. I would tell him – there's a lot of different things I want patients to do.
>
> * * *

> Q. What's your protocol for Kurt [Freimuth] for treating his blood sugar when it's too high?
>
> [Defense Counsel]: Objection.
>
> THE WITNESS: Yeah. So I would have a bunch of questions for him as to what caused that, is he testing, is he eating correctly, how much insulin did he take. I would probably call for him to add more insulin, re-check in an hour, two hours, let me know. If it's not coming down or responding, sometimes I send patients to the emergency room.

(Mangu Dep., Doc. 26-3 at PageID 429–30.) Freimuth also testified at his deposition he had hallucinations that night, which caused him not to "recall much of . . . what actually occurred[,]" and that he "beg[ged] for help all night" because of the hallucinations. (Doc. 26-1 at PageID 371.)

Defendant Carla Estep, a paramedic and medical supervisor at the jail, worked from 8:00 a.m. to 4:00 p.m. on March 25, 2015. She also had experience treating hundreds or thousands of diabetic patients. At approximately 9:10 a.m., Medic Estep was called to check on Freimuth in the booking area because of a concern that he might have a low blood sugar level. Freimuth was sweating (diaphoretic) and reported having hallucinations. Medic Estep checked Freimuth's vital signs and blood sugar level, which had climbed to 430. Medic Estep reviewed Freimuth's medical records and determined that he had not been administered insulin at 4:30 a.m. as scheduled. The records indicated that Medic Matt Rupp, a non-party, had checked Freimuth's blood sugar level and administered all of his medications except insulin during the morning medical pass. Medic Estep does not know why Medic Rupp did not administer the insulin. Medic Estep reported that she administered 24 units of Humulin R 500 insulin to Freimuth at approximately 9:15 a.m. (Estep Decl., Doc. 25-6 at PageID 208, 210.) She then sent Freimuth

to Mercy Hospital for examination because he was in distress. This was Medic Estep's only contact with Freimuth.

Freimuth disputes that Medic Estep gave him insulin. He testified that he "remember[ed] that morning very distinctly." (Freimuth Dep., Doc. 26-1 at PageID 372–73.) He testified that a corrections officer made the decision to send him to the hospital, and that he was not evaluated by a medic at the jail that morning. (*Id.*at PageID 372–73, 375.)

Neither Defendant Richard Jones, the Butler County Sheriff, nor Defendant Anthony Abdullah, M.D., the medical director at the jail, had any personal involvement with Freimuth while he was held at the jail.

Freimuth was diagnosed with ketoacidosis at the hospital. (Freimuth Dep., Doc. 26-1 at PageID 378–79.) "[K]etoacidosis is a well-recognized but preventable complication of insulin-dependent diabetes that can lead to death." *Sours v. Big Sandy Reg'l Jail Auth.*, 593 F. App'x 478, 485 (6th Cir. 2014).

**B.      Testimony of Dr. Mangu**

Dr. Padma Mangu testified in this case only as Freimuth's treating physician. Dr. Mangu is not a Federal Rule of Evidence 702 expert witness empowered to offer opinion testimony in this case. She was not identified as an expert witness by Freimuth's attorney during discovery, and she did not provide a written report of her opinions as required by Federal Rule of Civil Procedure 26(a)(2). Dr. Mangu did not review Freimuth's medical records from the jail. (Mangu Dep., Doc. 26-3 at PageID 435–36.) She expressly declined to testify as an expert witness on Freimuth's behalf. (*Id.* at PageID 436.)

## C. Procedural History

On August 1, 2016, Freimuth initiated this suit against Dr. Abdullah, Medic Oney, Medic Estep, Medic Sims, Deputy Cardwell, and Sheriff Jones. (Doc. 1.) He filed an Amended Complaint against those same Defendants, plus Medic Partee, on December 9, 2016. (Doc. 13.) He asserts only one cause of action that Defendants were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment to the Constitution pursuant to 42 U.S.C. § 1983. (*Id.* at PageID 35–36.) Freimuth explicitly asserts his claims against Dr. Abdullah, Medic Oney, Medic Estep, Medic Partee, and Sheriff Jones both in their individual and official capacities. (*Id.* at PageID 32–33.) However, he does not state whether he is asserting the claims against Medic Sims and Deputy Cardwell in their individual capacities, their official capacities, or both. (*Id.* at PageID 32–33.) "Generally, plaintiffs must designate in which capacity they are suing defendants; if not, by operation of law, defendants are deemed sued in their official capacities." *Soper v. Hoben*, 195 F.3d 845, 853 (6th Cir. 1999). Here, however, Defendants appear to assume that Medic Sims and Deputy Cardwell are sued in their individual capacities because they argue in their briefs that both are entitled to qualified immunity. The Court also will assume Freimuth intended to sue Medic Sims and Deputy Cardwell in both their individual and official capacities.

Eight months after filing the Amended Complaint, on August 22, 2017, Freimuth moved to add as a defendant Matt Rupp, the jail medic who failed to administer insulin to Freimuth during the morning medical pass as scheduled. (Doc. 19.) The Court denied Freimuth leave to add Rupp as a defendant because the claim against him was barred by the statute of limitations. (Doc. 22 at PageID 83.)

Defendants now move for summary judgment on the single cause of action against them. The pending motion is fully briefed and ripe for adjudication.

## II. LEGAL STANDARDS ON MOTION FOR SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56 governs motions for summary judgment. Summary judgment is appropriate if "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant has the burden to show that no genuine issues of material fact are in dispute. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 (1986); *Provenzano v. LCI Holdings, Inc.*, 663 F.3d 806, 811 (6th Cir. 2011). The movant may support a motion for summary judgment with affidavits or other proof or by exposing the lack of evidence on an issue for which the nonmoving party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986). In responding to a summary judgment motion, the nonmoving party may not rest upon the pleadings but must "present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986).

A court's task is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. "[F]acts must be viewed in the light most favorable to the nonmoving party *only* if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (emphasis added); *see also EEOC v. Ford Motor Co.*, 782 F.3d 753, 760 (6th Cir. 2015) (*en banc*) (quoting *Scott*). A genuine issue for trial exists when there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252; *see also Shreve v. Franklin Cnty., Ohio*, 743 F.3d 126, 132 (6th Cir. 2014) ("A dispute is 'genuine' only if based on *evidence* upon which a reasonable jury could

8

return a verdict in favor of the non-moving party.") (emphasis in original) (citation omitted). Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

## III. ANALYSIS

### A. Individual Capacity Claims

Freimuth purports to assert a cause of action for deliberate indifference in violation of the Eighth Amendment. A cause of action for deliberate indifference to the serious medical needs of a pretrial detainee arises, however, under the Due Process Clause of the Fourteenth Amendment. *See City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983); *Brown v. Chapman*, 814 F.3d 447, 465 (6th Cir. 2016). The cause of action will be analyzed as if it were properly pleaded. Defendants move for summary judgment on the grounds that they did not violate Freimuth's due process rights and that they are entitled to qualified immunity.

42 U.S.C. § 1983 provides a cause of action to a plaintiff who is deprived of constitutional rights by a person acting under the color of state law. The doctrine of qualified immunity provides "that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity provides immunity from suit, not simply a defense to liability. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). To determine whether qualified immunity applies, courts must ask whether the government official's conduct violated a constitutional right, and if yes, whether the specific right violated was clearly established. *Saucier v. Katz*, 533 U.S. 194, 200–01 (2001). "Qualified immunity is

9

applicable unless the official's conduct violated a clearly established constitutional right." *Pearson*, 555 U.S. at 232. A defendant is entitled to qualified immunity if his conduct violated a constitutional right, but that right was not clearly established at the time of the violation. *Saucier*, 533 U.S. at 200–01. The inquiry into whether the constitutional right was clearly established "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Id.* at 201. Courts can examine either issue first. *Pearson*, 555 U.S. at 236. "Each defendant's liability must be assessed individually, based on his or her own actions." *Dorsey v. Barber,* 517 F.3d 389, 399 n. 4 (6th Cir.2008).

Freimuth asserts Defendants rendered constitutionally inadequate medical care to him at the Butler County Jail. Mere negligence is not sufficient to support a claim for deliberate indifference to serious medical needs. *Farmer v. Brennan*, 511 U.S. 825, 835 (1994). "A claim for deliberate indifference to serious medical needs has both objective and subjective components." *Scozzari v. Miedzianowski,* 454 F. App'x 455, 464 (6th Cir. 2012). The objective component requires proof of a "sufficiently serious" medical need, while the subjective component requires showing that the defendant "perceived facts from which to infer substantial risk to the [individual], that he did in fact draw the inference, and that he then disregarded that risk." *Id.* (citations omitted).

A plaintiff must provide verifying medical evidence in certain circumstances, including when a claim is based on "the prison's failure to treat a condition adequately, or where the [plaintiff]'s affliction is seemingly minor or non-obvious." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 898 (6th Cir. 2004). Medical proof also usually is necessary to prove that a delay in providing adequate care caused a serious medical injury. *Santiago v. Ringle*, 734 F.3d 585, 591 (6th Cir. 2013). Relatedly, when a plaintiff alleges his care was merely inadequate, "federal

10

courts are generally reluctant to second guess medical judgments unless the medical treatment is so woefully inadequate as to amount to no treatment at all." *Asplaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011). But when "a plaintiff's claims arise from an injury or illness so obvious that even a layperson would recognize the need for a doctor's attention," it is sufficient for plaintiff to show that he or she "actually experience[d] the need for medical treatment, and that the need was not addressed within a reasonable time frame." *Blackmore*, 390 F.3d at 899–900 (internal quotation and citation omitted).

### 1. Claims against Medic Partee, Deputy Cardwell, Medic Oney, Dr. Abdullah, and Sheriff Jones

Medic Partee, Deputy Cardwell, Medic Oney, Dr. Abdullah, and Sheriff Jones cannot be held liable for deliberate indifference under the standards set forth above, and each of these Defendants is entitled to qualified immunity. At the outset, Freimuth presents no evidence or argument that Dr. Abdullah or Sheriff Jones had any direct involvement in the medical treatment provided to Freimuth during his incarceration. Supervisors cannot be held liable pursuant to § 1983 solely on the basis of respondeat superior. *See Petty v. Cty. of Franklin, Ohio*, 478 F.3d 341, 349 (6th Cir. 2007). Freimuth has not established that Dr. Abdullah or Sheriff Jones encouraged, authorized, or participated in his medical care at the jail. *See Coley v. Lucas Cty., Ohio*, 799 F.3d 530, 542 (6th Cir. 2015) (explaining circumstances under which supervisory liability could be imposed).

Likewise, Freimuth has not articulated a theory upon which Medic Partee, Deputy Cardwell, or Medic Oney could be determined as having been deliberately indifferent to his serious medical needs. Freimuth cooperated with these Defendants and informed them about his medical condition. He neither complained about nor displayed signs of medical distress while

with them. Freimuth has not provided evidence sufficient for a reasonable jury to conclude that he had an objectively serious medical need when he met with them to which they were deliberately indifferent.

For these reasons, the Court will grant summary judgment to Medic Partee, Deputy Cardwell, Medic Oney, Dr. Abdullah, and Sheriff Jones.

### 2. Claims against Medic Sims and Medic Estep

Freimuth's claims against Medic Sims and Medic Estep present a closer question. Freimuth further argues that there is at least a genuine dispute of fact whether he had a sufficiently serious medical need when he was examined by Medic Sims and Medic Estep.[4] He states that he was in distress and had asked for help because he was suffering from hallucinations. His blood sugar level had risen from 171 to 335 when he examined by Medic Sims at 12:45 a.m. He was sweating, in visible distress, and had a blood sugar level of 430 when he was examined by Medic Estep at 9:15 a.m. Freimuth was diagnosed with ketoacidosis, a serious diabetes complication, when he arrived at the hospital. The Sixth Circuit has found that a diabetic inmate denied insulin injections, who was later hospitalized for diabetic ketoacidosis after her release from lock-up, satisfied the objective requirement of a sufficiently serious medical condition even in the absence of specific medical records. *Garretson v. City of Madison*

---

[4] Freimuth argues in part that his treating physician, Dr. Mangu, testified that blood sugar levels over 300 always requires immediate medical attention. However, as explained above, Freimuth cannot rely on Dr. Mangu to present expert medical opinion evidence because he failed to qualify her as an expert witness in this case. Yet, even if he could rely on her, the Court finds Dr. Mangu's testimony to have been more nuanced. Dr. Mangu testified that a blood sugar level for Freimuth over 300 was "always concerning," but that he had had levels as high as 300 before. She further testified that if she had been informed of such a high level she would ask him questions to determine the cause, including what he was eating and how much insulin he had. (Mangu Dep., Doc. 26-3 at PageID 429–30.) She stated that "probably" would require him to take more insulin in that situation. (*Id.*) She also testified that type II diabetics like Freimuth can tolerate higher blood sugar levels than type I diabetics. (*Id.* at PageID 428.) The Court does not understand Dr. Mangu to have testified that Freimuth always required an immediate insulin shot if his blood sugar level reached 300.

12

*Hts.*, 407 F.3d 789, 794–95, 797 (6th Cir. 2005). Likewise, a reasonable jury could find on these facts that Freimuth had a serious medical condition at least by 12:45 a.m.

The issue, therefore, is not whether Freimuth had a serious medical need, but rather whether Medic Sims and Medic Estep knew and disregarded that serious risk to Freimuth's health. Significantly, Medic Sims and Medic Estep both provided Freimuth with some medical care. Medic Sims examined Freimuth, tested his blood sugar level, and decided that he could wait until 4:30 a.m. for his pre-scheduled insulin shot. Medic Estep examined Freimuth and sent him to a hospital for treatment. Defendants offer evidence that Medic Estep also administered insulin to Freimuth, but Freimuth testified that he was not given insulin at the jail. Because the Court cannot evaluate the credibility of a witness's testimony at the summary judgment stage, the Court must conclude that a disputed issue of material fact exists as to whether Medic Estep administered insulin to Freimuth.

Courts are reluctant to second guess a medical provider's judgment when a plaintiff acknowledges the provider provided some medical care. *Asplaugh*, 643 F.3d at 169. A disagreement based on medical judgment is ordinarily not an actionable constitutional offense. *See McFarland v. Austin*, 196 F. App'x 410, 410 (6th Cir. 2006); *Umbarger v. Corr. Med. Servs.*, 93 F. App'x 734, 736 (6th Cir. 2004). In fact, one court has recognized that "[d]etermining how to treat a patient's diabetes is a classic example of a matter for medical judgment as to the appropriate course of treatment." *Ory v. Hamilton Cty., Tenn.*, No. 1:13-CV-110, 2014 WL 1091965, at *7–8 (E.D. Tenn. Mar. 18, 2014).

Very recently, however, the Sixth Circuit instructed that the "[f]ailure by a jail medical staff to adhere to a prescribed course of treatment may satisfy the subjective component of an Eighth Amendment violation." *Richmond v. Huq*, 879 F.3d 178, 188 (6th Cir. 2018). The jail

13

medical team prescribed a plan whereby Freimuth would receive insulin injections three times per day before meals, around 4:30 a.m., 10:30 a.m. and 4:30 p.m. Examining the evidence in a light most favorable to Freimuth, Medic Sims and Medic Estep did not follow the prescribed plan of treatment. Medic Sims knew or should have known at 12:15 a.m. that Freimuth had been at the jail for almost twelve hours and his blood sugar level had risen from 171 to 335. Yet, Medic Sims did not administer insulin to Freimuth, nor does it appear that she checked to make sure that it was administered at 4:30 a.m. as scheduled. Medic Estep learned that non-party Medic Rupp failed to administer insulin to Freimuth at 4:30 a.m. as scheduled, that his blood sugar level had risen to 430, and that he was in visible distress. There is a dispute of fact whether she administered insulin to Freimuth before transferring him to the hospital. A reasonable jury could conclude in these circumstances that Medic Sims and Medic Estep were deliberately indifferent to Freimuth's medical needs when they failed to administer insulin to him as prescribed in his medical plan.

Defendants' summary judgment arguments regarding Medic Sims and Medic Estep are premised on their position that both provided adequate medical care. They do not make a separate qualified immunity argument based on whether the law regarding the level of care due to Freimuth is clearly established. Therefore, the Court will deny summary judgment to Medic Sims and Medic Estep in their individual capacities.

**B.     Official Capacity Claims**

Freimuth also asserts official capacity claims against Defendants. "Suing a public official in his official capacity for acts performed within the scope of his [or her] authority is equivalent to suing the governmental entity." *Soper*, 195 F.3d at 853 (citing *Ky. v. Graham*, 473 U.S. 159, 166 (1985)). The Court understands Freimuth to have pleaded a claim against Butler

County under *Monell v. Department of Social Services*, 436 U.S. 658 (1978). He alleges in conclusory fashion in the First Amended Complaint that "Plaintiff's treatment by Defendants was the result of policies, customs and practices of Defendants, either written or unwritten, and that such policies, customs and practices were the 'moving force' behind Mr. Freimuth's injuries." (Doc. 13 at PageID 36.)

Freimuth has failed to support the *Monell* claim at the summary judgment stage with evidence. He makes a barebones argument in his brief that Butler County's policies and procedures "are largely silent on medical care unique to diabetes." (Doc. 28 at PageID 590.) This is factually inaccurate insofar as Defendants introduced evidence that the jail had a written policy that required preliminary health screenings for all prisoners and medical evaluations for diabetic prisoners. (Doc. 25-8 at PageID 243.) The written policy further stated in large font, underlined text as follows:

> Prisoners who are diabetic, epileptic, are on cardiac medications, mentally ill, and or [*sic*] are taking continuous medication(s) shall be evaluated as soon as possible, and have their medications set up to be issued, so a lapse in care does not occur. The medical staff will make the appropriate documentation and create a medical file for the inmate at that time.

(*Id.* at PageID 244.) Freimuth has not made a specific argument or submitted evidence showing that the jail's policies were inadequate, nor established that the purported inadequacy caused a constitutional violation. The Court will grant summary judgment to Defendants on the official policy claim.

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment (Doc. 25) is **GRANTED IN PART AND DENIED IN PART**. Summary judgment is **DENIED** to Defendants as to the individual capacity claims against Medic Patricia Sims and Medic Carla Estep. Summary judgment is **GRANTED** to Defendants as to all other claims.

**IT IS SO ORDERED.**

Dated this 6th day of February, 2018.

BY THE COURT:

S/Susan J. Dlott
Susan J. Dlott
United States District Judge